IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

| | |
|---|---|
| CLINTON JONES, et al., ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **Civil Case No.: GLS-22-1076** |
| ) | |
| JAMES MICHAEL BUNNS, ) | |
| ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

## MEMORANDUM OPINION

The case is before the undersigned for all proceedings with the consent of the parties pursuant to 28 U.S.C. § 636(c). (ECF No. 17).

Currently pending before the Court is a request filed by the Defendant, James M. Bunns ("Defendant") seeking: (1) reconsideration of the Court's June 22, 2022 Order denying Defendant's request to dismiss the instant action; and (2) certification of a legal question to the Supreme Court of Maryland.[1] (ECF No. 27). The Court construes the recent request as a motion for reconsideration of its ruling denying the Defendant's dismissal request and, alternatively, as a motion for certification of a legal question to the Supreme Court of Maryland. ("Reconsideration/Certification Motion").

In light of the comprehensive written briefing and oral arguments made during the life of this case related to the Reconsideration/Certification Motion, this matter has been fully briefed and no further hearing is necessary.[2] *See* Local Rule 105.6 (D. Md. 2021).

---

[1] Known as the Court of Appeals of Maryland until December 14, 2022.
[2] *See, e.g.*, ECF Nos. 20, 23, 24, 27, 31, 34, 35.

For the reasons set forth below, Defendant's Reconsideration/Certification Motion is **DENIED.**

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On or about November 21, 2020, Plaintiff Clinton Jones was working on a job site for Aggregate Industries, Inc., in the District of Columbia when his co-worker, Defendant James Michael Bunns ("Defendant"), allegedly struck him with an asphalt roller machine. (ECF No. 3, "Complaint").  On or about March 17, 2022, Plaintiff Clinton Jones and Plaintiff Pamela Jones (his wife) ("Plaintiff C. Jones," "Plaintiff P. Jones," and collectively "Plaintiffs") filed their two-count Complaint against the Defendant in the Circuit Court of Prince George's County, alleging negligence in the operation of the asphalt-roller machine and loss of consortium resulting from that negligence, in violation of Maryland law. (*Id.*). On May 3, 2022, Defendant removed this matter to federal court based upon diversity of citizenship. (ECF No. 1).

On May 23, 2022, Defendant filed a letter expressing his intent to file a motion to dismiss Plaintiffs' Complaint under Fed. R. Civ. P. 12(b)(6). (ECF No. 20). In that letter, Defendant clearly set forth his arguments and cited to legal authority that he believed supported his view. Specifically, the Defendant contended that because the alleged tort occurred in the District of Columbia while he and Plaintiff C. Jones were performing work for their employer, District of Columbia laws apply to this lawsuit, including District of Columbia tort law and the District of Columbia's Workers' Compensation statute.[3] (*Id.*). The Defendant further asserts that because Plaintiff C. Jones' tort action is against him, a co-employee, District of Columbia's Workers' Compensation Statute ("the D.C. Statute") serves as the exclusive vehicle for Plaintiffs to recover

---

[3] *See* D.C. Code § 32-1501 *et seq.,* especially §§ 32-1503, 32-1504 (2020).

damages from him. According to the Defendant's reading of the D.C. Statute, however, an injured worker like Plaintiff C. Jones is barred from suing him, a co-employee, for damages sustained due to torts like negligence. According to the Defendant, then, Plaintiffs have failed to state a claim upon which relief can be granted. (*Id.*).

Plaintiffs opposed the letter request, clearly articulating their arguments and citing to legal authority that they believed support their view. (ECF No. 23). In particular, Plaintiffs agree that because the tort occurred in the District of Columbia, this Court must apply District of Columbia tort law to the facts at issue in the instant case.  However, because the Defendant seeks dismissal of Plaintiffs' lawsuit by relying upon a workers' compensation law, Maryland choice of law rules require this Court, in this diversity action, to apply the law of the forum (Maryland) and thus Maryland's Workers' Compensation Statute ("the Maryland Statute")—and not the D.C. Statute— to determine whether this "co-employee's action for damages" can proceed. According to the Plaintiffs, the Maryland Statute permits an employee, Plaintiff C. Jones, to sue his co-worker, the Defendant, for damages based on tort. (*Id.*).

On June 22, 2022, the Court held a status conference and entertained oral argument on the issues raised in the parties' pleadings. (ECF No. 24). At the conclusion of the hearing, the Court issued a detailed ruling denying the Defendant's request to dismiss, which was followed by a written order. (ECF Nos. 25, 33).  In brief, the Court, relying principally upon *Hutzell v. Boyer*[4] and *Hauch v. Connor*[5] and the Maryland Statute found that this suit against Defendant, a co-employee, can proceed despite the fact that the alleged tort occurred in the District of Columbia because of Maryland's greater interests in this lawsuit. (ECF Nos. 25, 33). Thereafter, the Court entered a Scheduling Order for the case. (ECF No. 26).

---

[4] 252 Md. 227, 249 A.2d 449 (1969).
[5] 250 Md. 120, 453 A.2d 1207 (1983).

On June 30, 2022, the Defendant filed the Reconsideration/Certification Motion. (ECF No. 27). The Defendant argued that the Court erred by: (1) finding that the Maryland Statute applied to this case by improperly relying upon a fact that he deemed immaterial; and (2) not finding that the facts in *Hauch v. Connor* are distinguishable from the facts in this case. The Defendant also requested that the Court certify the following question of law to the Supreme Court of Maryland:

> Whether Maryland would apply lex loci delicti and the substantive law of the District of Columbia which would bar suit against a co-employee if the defendant co-employee resides outside of Maryland and where the subject injury occurred in the District of Columbia

(*Id*.).  According to the Defendant, certification to the Supreme Court of Maryland is appropriate because this question, as he frames, accurately captures a "novel" issue that is "unsettled" and has not been addressed by the "Maryland courts," including the *Hauch* court. (*Id.*).

On July 8, 2022, the parties filed a Joint Status Report in which they formally requested an extension of the discovery deadlines, except for the deadline for the Defendant to file an Answer. (ECF No. 28). On July 15, 2022, the Defendant filed an Answer. (ECF No. 30).

On July 21, 2022, the undersigned held a telephonic hearing with the parties regarding the Reconsideration/Certification Motion and the Scheduling Order. (ECF No. 31). During the hearing, the Court, again relying upon *Hauch* and *Hutzell*, reiterated the seven factors that it had deemed important when denying the Defendant's request to dismiss the instant case.[6] (*Id.*). Ultimately, the Court also granted the parties' request to conduct limited discovery related to the issues raised by the Defendant, and allowed the parties to file supplemental briefing related to the

---

[6] The factors are: (1) Plaintiff C. Jones' residence; (2) the Defendant's residence; (3) the principal place of their employment; (4) their employer's place of incorporation; (5) the location of the accident; (6) the principal location where Plaintiff C. Jones received his treatment; and (7) the location where Plaintiff C. Jones filed his workers' compensation claim. (ECF Nos. 24, 33).

reconsideration and certification issues. The Court's written order also stayed the remaining deadlines in the Scheduling Order. (ECF No. 32).

Thereafter, the parties filed additional briefing related to the Reconsideration/Certification Motion and submitted a joint appendix of discovery-related exhibits. (ECF Nos. 34, 35, 38, 38-1 through 38-6). As part of that discovery, the Defendant testified that at the time of the November 21, 2020, incident he: (1) maintained a residence in Prince George's County Maryland; and (2) lived in his Prince George's County home. However, the Defendant also testified that at the time of the incident he: (1) had started renting a home in Virginia, but had not yet moved into the home; and (2) lived in Virginia in 2020 but would sleep in Maryland every night during the work week. (ECF No. 38-1, Deposition of James Bunns, "Bunns Dep.," 23:15-24:22; 70:10-71:20, pp. 7, 19).

In the supplemental briefing to the Reconsideration/Certification Motion, the Defendant conceded that four of the seven factors deemed significant by the Court—Plaintiff C. Jones' residence, the principal place of their employment, their employer's place of incorporation, and the location where Plaintiff C. Jones filed his workers' compensation claim—favor the Plaintiffs' position that the Maryland Statute should apply. However, the Defendant asserts that the D.C. Statute should apply because: (1) the aforementioned four factors are not determinative; (2) the remaining three factors—the Defendant's residence, the location of the accident, and the principal location where Plaintiff C. Jones received his treatment—should be construed by the Court in the Defendant's favor; and (3) Defendant's residence and the accident location are "the most significant" factors for the Court's analysis. (ECF No. 34). Finally, the Defendant maintained that the limited discovery obtained did not alter his view that the Court should certify the question that he posited to the Supreme Court of Maryland. (*Id.*).

In Plaintiffs' supplemental pleading, they advance three related arguments. First, that there is no new evidence or facts to support reconsideration of this Court's denial decision. Second, that the Defendant ignores another important factor considered by the *Hutzell* court, namely Maryland's public policy interests in the ability of an employee to sue a co-employee in tort. According to the Plaintiffs, this "most important" public policy factor demonstrates that Maryland's interests are superior to those of the District of Columbia and that the Maryland Statute should apply. Third, that certification to the Supreme Court of Maryland is not required because the question posited by the Defendant has already been answered by that court. (ECF No. 35).

## II.  THE LAW

### A.  Federal Rule of Civil Procedure 59(e): Motion for Reconsideration

Pursuant to Fed. R. Civ. P. 59(e), a motion for reconsideration shall be filed no later than twenty-eight days after the entry of the judgment. According to the Fourth Circuit, a court may alter or amend a prior judgment only under three circumstances:

(1) to accommodate an intervening change in controlling law;
(2) to account for new evidence; or
(3) to correct a clear error of law or prevent manifest injustice.

*United States ex rel. Carter v. Halliburton Co.*, 866 F.3d 199, 210 (4th Cir. 2017) (citation omitted). Finally, granting a motion for reconsideration is an extraordinary remedy, which should be used sparingly. *Id.*

### B.  Certification of a Question of Law to the Supreme Court of Maryland

Pursuant to the Maryland Uniform Certification of Questions of Law Act ("MUCLA"), the Supreme Court of Maryland may answer a question of law certified to it by a court of the United States if: (1) "the answer may be determinative of an issue in pending litigation in the certifying court;" and (2) "there is no controlling appellate decision, constitutional provision, or statute." Md.

6

Code Ann., Cts. & Jud. Proc. § 12-603; *see also Liberty Mutual Ins. Co. v. Murphy*, Civ. No. SAG 20-1961, 2021 WL 2784264, at *2 (D. Md. July 2, 2021).

A federal court should not certify a question of law if that court "'can reach a reasoned and principled conclusion' [on the issues before it]." *Bel Air Auto Auction, Inc. v. Great N. Ins. Co.*, 534 F. Supp. 3d 492, 502 (D. Md. 2021) (quoting *Hafford v. Equity One, Inc.*, Civ. No. AW 07-1633, 2008 WL 906015, at *4 (D. Md. Mar. 31, 2008)). The Fourth Circuit has found certification appropriate to a state's highest court where a case involves "substantial, unresolved questions of state law." *Liberty Mutual Ins. Co.*, 2021 WL 2784264, at *2. However, the Fourth Circuit has held that certification is appropriate "only when 'available state law is *clearly insufficient*....'" *Passaro v. Virginia*, 935 F.3d 243, 252-53 (4th Cir. 2019) (quoting *Roe v. Doe*, 28 F.3d 404, 407 (4th Cir. 1994) (internal citation omitted) (emphasis added)). If sufficient law exists to enable a court to arrive at a principled conclusion, the court should resolve the case and avoid "prolonging the proceedings" through certification. *Arlington v. Coleen, Inc.*, Civ. No. AMD 00-191, 2001 WL 34117735, at *5 (D. Md. Mar. 29, 2001).

## III.    DISCUSSION

Defendant asserts that the Court erred in denying its request to dismiss the Complaint by finding that Plaintiffs have stated a claim upon which relief can be granted, and that the Court should reconsider its June 2022 Order. The Defendant does not argue that there has been an intervening change in controlling law, nor does the Defendant assert that the new evidence obtained during limited discovery should lead this Court to amend its earlier judgment. Rather, the Defendant avers the Court clearly erred when it found that the Maryland Statute applies. In particular, Defendant now argues that this Court should reconsider its ruling for two reasons, namely that the Court erred: (1) by misapplying the factors set forth in *Hauch v. Connor*, 453 A.2d

1207 (1983) and *Hutzell v. Boyer*, 249 A.2d 449 (1969); and (2) by erroneously concluding that the Maryland Statute applies to the instant dispute rather than the D.C. Statute.

In addition, the Defendant separately asserts that the Court should certify its proposed question of law to the Supreme Court of Maryland because "Maryland courts have not addressed the question in the present factual scenario," which, according to the Defendant, makes the proposed question of law "novel." (ECF Nos. 27, 34).

The Plaintiffs counter that the Court properly considered the factors set forth in *Hutzell* and *Hauch*. Plaintiffs also aver that *Bishop v. Twiford*, 562 A.2d 1238 (Md. 1989), makes clear that Maryland's interest in upholding its public policy regarding co-employee lawsuits is the "most important" factor, which, in this case, favors the application of the Maryland Statute. In addition, Plaintiffs contend that the request for certification should be denied because "the [Supreme Court of Maryland] has already answered [the] proposed question of law." The Court will address each of these arguments in turn.

**A. Defendant's Request for Reconsideration**

The Defendant contends that the Court misapplied the factors set forth in *Hauch* and *Hutzell* because the Court: (1) improperly relied on the fact that Aggregate Industries' insurance carrier consented to the jurisdiction of the Maryland Worker's Compensation Commission when issuing its ruling; and (2) failed to find that the D.C. Statute applies when Plaintiff C. Jones received his treatment in D.C. and the "two most significant factors," favor the application of the D.C. Statute. (ECF No. 27, pp. 1-2; ECF No. 34, p. 1). The Plaintiffs assert that the Court's jurisdictional ruling should stand because the Court's initial ruling was "well-reasoned" and properly relied on the factors set forth in *Hauch*, *Hutzell*, and subsequently *Bishop*.

The Court finds factually inaccurate the Defendant's contention that the Court "improperly relied upon as a key factor for establishing Maryland's interest that Aggregate Industries, and/or its Worker's Compensation insurance carrier, consented to the Jurisdiction of Maryland's Worker's Compensation Commission for Mr. Jones' Workers' Compensation claim." Although the Court did mention such fact when issuing its ruling, it was not a key factor to the Court's analysis. During the hearing, the Court referred to the consent provided by Aggregate Industries' insurance carrier as follows:

> But I would be remiss if I did not point out what the Plaintiffs said, in ECF 23, page 2, the third full paragraph before III, which is there the Plaintiffs tell me that 'importantly, per Plaintiffs' Worker's Compensation form, there is a consideration date of 12/28/2020, in which any contesting issue to jurisdiction were required to be filed or it was assumed that the insurance company voluntarily agreed that Maryland was the proper jurisdiction on behalf of Aggregate Industries.'

(ECF No. 33, p. 22). However, when explaining the basis of its ruling, the Court expressly outlines the factors that it considered:

> I think that the important interests are you have got a citizen of the State of Maryland, you have got an employer who has that person work in Maryland, you have the claim being filed here in Maryland, you have the Defendant who is a resident in Maryland. I assume through discovery you would be able to file—to do some additional development of whether or not 99 percent of the work performed by the Defendant and/or the Plaintiff was in Maryland.

(ECF No. 33, p. 23). The Court's ruling, then, which the record accurately reflects, properly relied on the various factors outlined in *Hauch* and *Hutzell*, e.g., Plaintiff C. Jones' residence, place of employment, etc.

Furthermore, the Court finds the Defendant's second argument unavailing. First, as held *supra*, Defendant concedes that at least four factors that the Court considered in making its ruling favor the application of Maryland law, including: (1) Plaintiff C. Jones' residence in Maryland; (2) the principal place of employment; (3) place of incorporation of the employer; and (4) the

9

Workers' Compensation claim jurisdiction. (See ECF No. 34, p. 1). Nonetheless, the Defendant

maintains that the location of Plaintiff C. Jones' treatment, and the "two most significant factors"

(the Defendant's residence and the location of the injury) require the application of the D.C.

Statute.

It is undisputed in this case that the injury took place in Washington D.C., and the

Defendant presents evidence that the Defendant has rented a home in Virginia. (Bunns Dep. 60:11-

18, p. 16). However, as set forth previously, the parties engaged in limited discovery, which

included clarification of the issue of the Defendant's residence. (ECF No. 38-1). In the Defendant's

deposition, the Defendant testifies as follows:

> Q: All right. Do you remember when you signed the rental agreement for the
> [Virginia home on] Coan Stage Road? Was it before your accident on November
> 21st, 2020 or after?
> A: Before.
> Q: All right. Did you start living at Coan Stage Road before or after the November
> 21st, 2020 accident?
> A: After.
> Q: Did you still have your Prince George's County home at the time of this accident
> – November 21st, 2020?
> A: Yes.

(Bunns Dep. 24:10-22, p. 7). Later in the testimony, when discussing where he slept most nights,

the Defendant testified as follows:

> Q: All right. If your jobs went late – in other words, you didn't finish at 2:30 or
> 3:00 but you finished later – would you on occasion, as opposed to driving home
> to Virginia, would you sleep in the [Clinton, Maryland, work] yard?
> A: Yes.
> …
>
> Q: All right. And can you give me some idea of before the November 21st, 2020
> accident, how – well, I'll ask you two questions. Before the accident, how
> frequently would you sleep in the yard?
> A: I slept in the yard every day and went home on weekends.

(Bunns Dep. 70:10-71:8, p. 19). Furthermore, when discussing his driver's license, the Defendant testifies that he did not move from Maryland to Virginia until after the November 21, 2020 incident:

> Q: All right. When did you switch your Maryland driver's license to Virginia?
> A: After I moved back.
> Q: All right. And did you switch your Maryland driver's license to Virginia after the accident on November 21st of 2020? Would that have been after?
> A: Repeat that?
> Q: Yes, your accident with Mr. Jones occurred on November 1st [sic] of 2020?
> A: Yes.
> Q: And I'm just asking you, did you change your driver's license to Virginia after that accident?
> A: Yes, after.

(Bunns Dep. 63:2-16, p. 17).

The Court finds that Defendant has testified that although he rented a home in Virginia at the time of the incident and stayed there on the weekends, he likewise maintained a residence in Maryland and slept in Maryland five out of the seven nights of the week. In addition, he asserts that he did not get rid of his Maryland driver's license and acquire a Virginia driver's license until after he "moved back" to Virginia, which, according to the Defendant's testimony, took place after the November 2020 incident. Accordingly, contrary to counsel's averment in his pleadings that the "Defendant testified clearly at his deposition that he moved from Maryland, to reside in Virginia, prior to the date of the Occurrence," the Court finds that the Defendant's own statements allow it to reasonably infer that the Defendant's de facto residence was in Maryland, as he slept there five out of seven days each week during the relevant time period. Ultimately then, if the Court considers the Defendant's residence, which the Defendant regards as a "most significant factor," it supports the Court's analysis. Accordingly, there is no clear error.[7]

---

[7] Alternatively, the Court finds that the Defendant never clearly articulates how the Defendant's supposed residence in **Virginia** substantiates his argument that **Washington D.C.** law applies to the instant action. (See ECF Nos. 20, 27, 34). Even assuming *arguendo* that the Defendant's residence and the place of injury both support an application of

Thus, the only remaining factors that could potentially point towards the application of the D.C. Statute are: (1) the location where Plaintiff received his treatment; and (2) the location of the accident. The Defendant does not assert that the location of Plaintiff's treatment is one of the "most significant" factors pertinent to this Court's analysis. Accordingly, given that the location of the injury is the only so-called "significant" factor in favor of the application of the D.C. Statute, then, the Court finds that it did not "clearly err" in its application of the multifactor test set forth in *Hauch* and *Hutzell*.

Moreover, the Court finds that Bishop *v. Twiford*, 562 A.2d 1238 (Md. 1989), which analyzes the multifactor test set forth in *Hauch* and *Hutzell*, reinforces the Court's finding. In *Bishop*, the court determined whether it should apply Maryland's Workers' Compensation statute when: (1) the plaintiff lived in Pennsylvania; (2) the defendant lived in Maryland; (3) both parties worked for a company headquartered in Delaware; and (4) the injury, stemming from an automobile accident, took place in Maryland. *Bishop*, 562 A.2d at 1239-40. Ultimately, the *Bishop* court found that Maryland law applied based upon a multifactor balancing test that it derived from *Hutzell* and *Hauch*. The *Bishop* court identified various factors to consider such as: (1) Maryland's interest in applying its own public policy regarding co-employee lawsuits; (2) plaintiff's residence; (3) defendant's residence; (4) where the plaintiff applied for benefits under Maryland's Workermen's Compensation Act; (5) the location of the injury; (6) the treatment location; and (7) the principal place of employment, i.e., where the employer is located and where the parties' work took place.

---

the D.C. Statute, the Court still finds that it did not err. Contrary to Defendant's position that the place of injury and Defendant's residence are controlling factors, the Court holds that the instant choice of law analysis requires the Court to utilize a multifactor balancing test, which includes, but is not solely determined by, the place of the injury and the Defendant's residence.

Upon consideration of these factors, the *Bishop* court strongly emphasized the importance of Maryland's interest in applying its own Workers' Compensation policy. 562 A.2d at 1242. However, despite specifically finding that Maryland's public policy is a "very important" factor, the court reinforced the principle that no one factor is controlling:

> While very important, the public policy of the forum state is not itself dispositive. Other factors in the present case favoring application of Maryland law are that the injury occurred in Maryland, the defendant was a resident of Maryland, and the defendant's primary place of employment is Maryland.

*Id.* In essence, the *Bishop* court held, consistent with *Hauch* and *Hutzell*, that *multiple factors* play into a court's determination of which Workers' Compensation statute to apply. After analyzing the various factors, the court held the following:

> In light of Maryland's public policy, the occurrence of the injury in Maryland, the residence of the parties, the defendant's being principally employed in Maryland, and the plaintiff's being her supervisor for that employment, we conclude that Maryland's worker's compensation law, rather than Delaware's statute, is determinative.

*Id.* The Court finds that the *Bishop* court did not at any point make a finding consistent with the Defendant's assertion that the place of injury and a defendant's residence are the "most significant" factors. Nor did the *Bishop* court make a finding that a court must apply the law of the state where an injury occurs and a plaintiff receives treatment for any alleged injury.[8]

Instead, the analysis in *Bishop* guides this Court to utilize a multifactor balancing test, in which Maryland's public policy is a "very important" factor, to determine whether to apply the Maryland Statute. In this case, as required by *Hauch*, *Hutzell*, and reiterated in *Bishop*, the Court analyzed *all* of the factors, including the Defendant's residence, the location where the Plaintiff received treatment for his injuries, and the "very important" factor related to Maryland's public

---

[8] Likewise, even assuming *arguendo* that Defendant's residence supports the application of the D.C. Statute, the Court holds that the *Bishop* decision does not stand for the proposition that this must apply the D.C. Statute simply because the Defendant's residence and the location of the injury favor the application of the D.C. Statute.

policy interest, and properly found that the Maryland Statute applies to the instant dispute. In sum, then, the Court did not "clearly err."

Accordingly, the Reconsideration/Certification Motion as it relates to Defendant's request for reconsideration is denied.

### B. Defendant's Request for Certification

Alternatively, Defendant avers that certain facts exist in the instant case that were not present when the Supreme Court of Maryland decided *Hauch* or *Hutzell*, such that it is appropriate to certify to the Supreme Court of Maryland the question of whether "Maryland would apply *lex loci delecti* and the substantive law of the District of Columbia," which would bar Plaintiffs' suit against the Defendant. (ECF Nos. 27, 34). The Plaintiffs assert that the Supreme Court of Maryland has already answered the question that the Defendant seeks to certify, which makes certification improper.

The Defendant asks this Court to certify the following question of law to the Supreme Court of Maryland:

> Whether Maryland would apply *lex loci delecti* and the substantive law of the District of Columbia which would bar suit against a co-employee if the defendant co-employee resides outside of Maryland and where the subject injury occurred in the District of Columbia.

(ECF No. 27, p. 3). Although the Court disagrees with Plaintiffs' contention that *Bishop* answered the Defendant's *exact* question of law (in *Bishop*, for example, it was the plaintiff, not defendant who resided outside of Maryland) the Court finds that *Bishop* and *Hauch* preclude the need for certification to the Supreme Court of Maryland.

Here, the Plaintiff does not appear to dispute whether the answer to the proposed question of law would be "determinative." Indeed, the Court finds that if the law required it to apply the substantive law of the District of Columbia, Plaintiff would be precluded from bringing the instant

14

action as the D.C. Statute bars co-employee tort actions. *See* D.C. Code § 32-1503. Accordingly, the Court only must determine whether there is a "controlling [Maryland] appellate decision, constitutional provision, or statute," that applies to the instant dispute. *Liberty Mutual Ins. Co.*, 2021 WL 2784264, at *2.

As held *supra*, certification to the Supreme Court of Maryland is proper only if "available state law is clearly insufficient." *Passaro*, 935 F.3d at 252-53 (quoting *Roe*, 28 F.3d at 407) (internal citation omitted)). Here, however, there is sufficient state law guidance for the Court to reach a reasoned and principled conclusion. First, in *Hauch*, the court held that the place of injury is an important factor, but *lex loci delecti* principles **do not** apply when a court is analyzing a choice of law issue related to a Workers' Compensation statute. *See Hauch*, 453 A.2d at 1211 ("Today, however, many courts recognize that workmen's compensation law conflict issues present distinct policy questions and should not be treated as tort or contract matters for choice of law purposes. We agree with this approach"); *id.* at 1212 ("Consequently, where actions by injured employees have been brought against co-employees in one state for wrongs committed in another state, courts, even in traditional *lex loci delecti* jurisdictions, have applied the workmen's compensation law of the forum state"); *see also Bishop*, 562 A.2d at 1241 ("The *Hauch* opinion first made clear that the choice of law principles, relevant to whether a co-employee suit was allowable, were not those of tort law but those of worker's compensation law").

Even if the Court sets aside the *Hauch* court's clear finding on the application of *lex loci delecti*, the *Bishop* court provides ample guidance on how this Court must analyze the instant choice of law issue.  In essence, the Defendant's proposed question of law seeks clarification on how the following factors impact the instant choice of law dispute: (1) the employment status of the parties, i.e., whether they are co-employees; (2) where a plaintiff and defendant reside; and (3)

the location of the injury. In *Bishop*, the court addressed each of these factors and demonstrated

that a court is to consider each factor as part of an overall multifactor balancing test. *Id.* at 1242.

The *Bishop* court assessed whether to apply Maryland's Workers' Compensation statute

based on whether the parties were co-employees, where the parties resided, where the injury took

place, and Maryland's overall public policy interest, and it did so without reliance on, or mention

of, *lex loci delecti* principles. Thus, the question of law presented by Defendant is not "novel" nor

is it a question that this Court cannot answer due to "clearly insufficient" state law. The *Bishop*

and *Hauch* courts demonstrate that *lex loci delecti* does not apply to the instant choice of law

dispute and such dispute is analyzed by utilizing a multifactor balancing test. Consistent with this

approach, this Court utilized the multifactor test, considering the various factors, including the few

factors that favor the application of the D.C. Statute, e.g., the location where Plaintiff C. Jones

received treatment for his injuries and the location of the accident, before concluding that the

Maryland Statute applies to the instant dispute. In sum, the Court need not certify the Defendant's

proposed question of law to the Supreme Court of Maryland.

Accordingly, the Reconsideration/Certification Motion as it relates to Defendant's request

to certify a question of law to the Supreme Court of Maryland is denied.

## IV.    CONCLUSION

For the foregoing reasons, the Reconsideration/Certification Motion is **DENIED**.

A separate order will follow.

Dated:  June 9, 2023

_____/s/_____
The Honorable Gina L. Simms
United States Magistrate Judge